Culp v. Mulvane.

66   143
66   618

B. F. CULP v. JOAB MULVANE, *as Administrator, etc., et al.*

No. 12,881.   (71 Pac. 273.)

SYLLABUS BY THE COURT.

1. CREDITOR'S BILL—*Triable to the Court—Findings by Jury Advisory Only.*   An action by a creditor of a deceased person against those whom he claims to have fraudulently converted, and to be fraudulently concealing, property belonging to the deceased, praying discovery thereof, in the interest of the plaintiff and all others of deceased's creditors who might choose to come into the action and avail themselves of such recovery, is an action

Culp v. Mulvane.

in the nature of a creditor's bill, and, as such, triable to the judge and not to a jury, as a matter of right. Where the issues in such case have been submitted to a jury for the purpose of making advisory findings, it is not error for the court to refuse to be governed by such findings, but he may change them and make such new ones as, under the evidence, he thinks proper. Such findings of fact made by the court will not be disturbed by this court, unless manifestly against the weight of the evidence.

2.  CORPORATIONS—*Transfer of Stock by Delivery.* Under the statutes of this state the stock of a private corporation is subject to a valid transfer as between the grantor and grantee by a delivery of the certificate of such stock indorsed in blank, with a purpose thereby to make such transfer. Neither the formal transfer of such stock upon the stock-book of the corporation nor the issuance of certificates to the purchaser is essential to the valid transfer thereof as between the parties thereto or those claiming under them.

3.  ———— *Transfer on Books after Death of Transferor.* A *bona fide* transfer of such stock by the delivery of certificates and payment therefor vest in the transferee the right, as against the transferor, to have the same transferred upon the stock-books of the company and to have new certificates issued to him, even after the death of the transferor.

4.  ———— *Fraudulent Transfer—Burden of Proof.* In an action by a creditor of the transferor attacking such a transfer on the ground of fraud, the burden of showing fraud rests upon the party asserting it. A showing by him that the stocks in question were transferred in the manner indicated does not shift the burden to the transferee to prove the *bona fides* and full consideration of such transfer.

5.  MOTION FOR NEW TRIAL—*Affidavits—Review.* Upon the hearing of a motion for a new trial on the ground of newly-discovered evidence, it is proper for the court to consider affidavits for, and against, the same. Where such affidavits are contradictory upon the facts, this court will not disturb the finding of the trial court, unless it shall appear that an abuse of discretion exists.

Error from Reno district court; M. P. SIMPSON, judge. Opinion filed January 10, 1903. Affirmed.

### STATEMENT.

ON October 5, 1898, the plaintiff in error, as plaintiff below, filed his petition in the district court of Reno county, Kansas, alleging that there was due him

from the estate of R. R. Price, deceased, the sum of $12,887 ; that said claim had been duly presented to the probate court of Reno county, and, on the 17th day of June, 1897, allowed ; that the said claim drew interest at the rate of ten per cent. per annum, and that no part thereof had ever been paid.   The plaintiff alleged further that the deceased R. R. Price in his lifetime owned $160,000 of the stock of the Kansas Salt Company, a Kansas corporation doing business in the city of Hutchinson, and also owned an equal amount of the first-mortage bonds of said company ; that a short time before his death, being in failing circumstances, he fraudulently transferred the said stock and bonds to the defendants, Joab Mulvane and John R. Mulvane, with the unlawful intention of hindering, delaying and defrauding his creditors, and particularly the plaintiff in this case ; that the transfer was made without consideration, and with the intent on the part of said R. R. Price to defraud his creditors, and that the defendants, Joab Mulvane and John R. Mulvane, received the stock and bonds without consideration, knowing that the property was of the actual cash value of $160,000 or more, and knowing that R. R. Price was transferring the same to them with the intent to hinder, delay and defraud his creditors, and to prevent them from collecting the amount due them ; that soon after said unlawful transfer of said stock and bonds R. R. Price died intestate ; that afterward his widow, Margaret D. Price, acting with the said defendants, Joab Mulvane and John R. Mulvane, with the intent of completing and carrying out the unlawful transfer, permitted Joab Mulvane to be appointed administrator of the estate of R. R. Price, deceased; that the officers and agents of the salt company had, since the

illegal transfer of the stock and bonds, aided, abetted and assisted the Mulvanes to sell and transfer the same and to conceal the facts with reference to their ownership and their unlawful transfers, and were aiding, assisting and abetting the Mulvanes to conceal the property belonging to the Price estate; that Joab Mulvane, as administrator, wholly failed, neglected and refused to report the stock and bonds as a part of the estate of R. R. Price, deceased; that the stock and bonds were practically all of the property of the estate of R. R. Price, and that the report of the administrator as made to the probate court showed that the estate of Price was wholly insolvent, notwithstanding the fact that there were claims of creditors against the estate in excess of $120,000; that the plaintiff had no adequate remedy by the usual process of law; that with the exception of the said stocks and bonds the Price estate was wholly insolvent; that the plaintiff brought the suit for the benefit of all of the creditors of the estate who wished to take advantage of the same and bear their share of the necessary expense. All of the creditors of the Price estate were made parties defendant. The petition concluded with a prayer that the transfer of the stocks and bonds of the Mulvanes be declared illegal and void, and that they be decreed to deliver the same to the sheriff of Reno county, to be by him sold as upon execution, and the proceeds applied to the payment of the claims of the creditors of Price.

Thereafter, on January 13, 1900, and before the defendants had answered, the plaintiff filed a supplemental petition, and, in substance, charged that, since the filing of the petition the Mulvanes, being the principal stockholders of the Kansas Salt Company and its officers, managers and directors, caused it to

suspend business and transfer all of its property to the Hutchinson Kansas Salt Company; that they had refused to permit the plaintiff to examine the books of the Kansas Salt Company; that they had appropriated the proceeds realized from the sale of the property of the company to their own use, with the intention and purpose of preventing the plaintiff from causing the stocks and bonds described in his original petition to be subjected to the payment of his debts and the debts of the other creditors; that in this conversion the Mulvanes had acted jointly, and by reason of it were jointly indebted to the estate of Price for the use and benefit of the creditors of the estate in the sum of $160,000, that being the value of the stocks and bonds at the time the same were fraudulently conveyed to them; and that the Mulvanes were jointly indebted to the plaintiff in the full amount due to him from the Price estate as set forth in the original petition. This supplemental petition concluded with a prayer that, in addition to the relief prayed for in his original petition, plaintiff have judgment against the Mulvanes for the full sum due to him as demanded in the original petition.

Answering this petition and supplemental petition, the Mulvanes denied generally, and pleaded the statute of limitations and other matters in abatement.

The issues coming on to be heard, the plaintiff demanded a jury to try the same as a matter of right, the defendants objecting thereto on the ground that the issues were only of equitable cognizance. Thereupon a jury was called for the purpose, as the judge at the time announced, of making "advisory findings."

A large quantity of evidence, making a record of over 300 pages, was introduced *pro* and *con* upon the

issues raised by the pleadings, much of it tending to prove the plaintiff's allegations of fraud and much of it tending to disprove it. The jury, acting under the instructions of the court, made answer to over 100 special questions, which, as they came from the hands of the jury, found the issues almost entirely for the plaintiff and in accord with his theory. These findings would unquestionably have entitled him to the relief which he sought. Both parties filed motions to change these findings, the plaintiff upon a few immaterial matters, and the defendants upon material and vital ones. The court sustained the motion of the defendants and changed the findings of fact returned by the jury so that they found nothing of actual fraud in the conduct of either Price or of the Mulvanes, and found that the Mulvanes purchased for a full and sufficient consideration the stocks and bonds from Price.

It seems that Price had been a man of large means; that he had engaged in the salt business in Hutchinson, and in various other schemes of large importance; that he had, early in 1894, sold to one Hutchinson the stocks and bonds in question; that the stock was transferred by the delivery of the certificates and transfer of the same upon the books of the company; that subsequently Price repurchased from Hutchinson most of these stocks and bonds, taking from him an assignment in blank of the certificates of stock. In October of that year, Price sold to J. R. Mulvane this stock and these bonds for what the court found to be a *bona fide* and sufficient consideration. The certificate bearing the indorsement of Hutchinson in blank was passed to Mulvane as an evidence of the purchase. Soon thereafter Price suddenly died, and the Mulvanes had the stock transferred to them upon the

books of the company after Price's death, the same
having theretofore, since the transfer by Price to Hutch-
inson, stood in the name of Hutchinson on the stock-
books of the company.   It seems from the evidence
that this transfer by Price to the Mulvanes was known
among their business associates at the time, though,
in view of the findings of the court acquitting both
Price and the Mulvanes of all fraud in connection there-
with, this fact may be unimportant.

*Frank L. Martin*, and *George A. Vandeveer*, for plain-
tiff in error and for defendant in error John W. Rose.

*H. Whiteside*, for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J. :   Large space is given in the brief
and argument of the plaintiff in error to a discussion
of the question of actual fraud on the part of the Mul-
vanes.   We think, if the findings of the court are to
be upheld, that all these questions have been settled
and will not need our consideration, so that the first
question we are called upon to consider is whether
the court erred in refusing to submit the case for final
consideration to the jury, and in treating the findings
of the jury only as "advisory" and not as binding
and conclusive upon the disputed questions of fact.
This is but another statement of the question whether
the issues made by the pleadings showed a case triable
by the jury, or to the court.   If the former, then the
jury's findings must stand ; if the latter, then the
conscience of the judge is the tribunal of last resort
as to the facts involved.   There is very grave question
whether the conduct of the plaintiff was not such in
this respect as to waive his right to a jury, if he had
such a right.   However, we do not care to put the

discussion upon that point. We are clearly of the opinion that the pleadings were in essence a creditor's bill, brought for the discovery of fraudulent assets of the Price estate, and for the purpose of distributing these assets among all the creditors who might choose to avail themselves of the relief sought by this litigation. It was not an "action for the recovery of money or of specific real or personal property." It was such an action as, from time immemorial, has been recognized and treated as purely of equitable cognizance, the settling of the issues in which must be submitted to the conscience of the chancellor.

The plaintiff, however, insists that, even if the question of actual fraud is eliminated, there still remains enough in the case to require judgment to be entered in his favor, the claim being that, inasmuch as the transfer of title to the stock was evidenced only by the delivery of the certificates indorsed in blank, and not by transfer upon the books of the company, as required by our statute, such transfer was such a concealment as to amount to a conclusive presumption and proof of fraud as a matter of law; that, as the transfer of the stock was not made before the death of Price, it could not be made thereafter so as to vest the legal title thereto in the Mulvanes, and, at most, they had only such equitable lien on the stock as would entitle them to receive the amount paid for the same; that the blank assignment of the certificate of stock was but a power of attorney from Price authorizing the transfer of the title upon the stock-books, which power of attorney his death revoked; that it required the transfer on the stock-books of the company in the lifetime of Price to transfer the ownership of the stock, and this not having been done the transaction must be deemed to be fraudu-

lent as a matter of law, under section 3 of the act relative to frauds and perjuries, or, at least, it would be such a badge of fraud as to cast upon the Mulvanes the burden of proving that the sale of the stock was made in good faith and upon sufficient consideration, and that they failed in this, as they failed to show the value of certain stocks in a Colorado corporation, which were given to Price as a part of the purchase-price of the salt company's stock.

All of these questions, and, perhaps, some others analogous thereto, will be solved by determining the effect, as between the parties thereto, of the transfer of stock by a simple passing from the vendor to the vendee of the certificates of stock indorsed in blank. Somewhat is made of the provisions of our statute upon the matter, which is as follows :

"The stock of any corporation created under this act shall be deemed · personal estate, and shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe ; and no person shall at any election be entitled to vote on any stock, unless the same shall have been standing in the name of the person so claiming to vote, upon the books of the corporation at least thirty days prior to such election ; but no shares shall be transferred until all previous assessments thereon shall be fully paid." (Gen. Stat. 1901, § 1286.)

It will be observed that this statute provides that the manner of the transfer of stock upon the books of the company shall be prescribed by the by-laws. It does not appear in this case that any by-law concerning this matter had been adopted.

The stock in a corporation is personal estate. The stock is something apart from the certificates. These but evidence a fact which otherwise exists. They are but paper representations of an incorporeal right, and,

as such, resemble other muniments of title. The right of stock may exist entirely separately and independently of the certificates.

Certificates of stock are frequently spoken of as securities, but they are not such, in the proper signification of the term. They have none of the characteristics of negotiable paper ; they are simply paper evidences of the right of the holder to the interest in the corporation described in them. While they are non-negotiable, in the ordinary acceptation of that term, yet they possess one of the attributes of negotiable paper, that of being assignable as between vendor and vendee, pledgor and pledgee, by simple delivery when properly indorsed, and, when thus transferred, pass the title to the extent intended by the parties thereto, as between such parties, not only to the paper evidence of title, but to the shares of stock themselves. The authorities extend this rule no further. As against the corporation itself and third parties claiming rights under the corporation, of course this rule would not obtain. Indeed, it has been held that a provision in the governing statute, declaring that no transfer of corporate stock shall be valid for any purpose until such transfer shall have been entered on the books, must be limited in its application to the objects sought to be accomplished by the statute, which objects refer to matters growing out of the stockholder's relation to the corporation and its creditors, and does not make invalid an unregistered transfer, as between vendor and vendee. (*Johnson v. Underhill et al.*, 52 N. Y. 203.)

The foregoing views are fully sustained by the discussion found in Thompson on Corporations, section 730, and Cook on Corporations, section 381.

In *Plumb v. Bank of Enterprise*, 48 Kan. 484, 29

Pac. 699, this court has substantially taken the same view by approaching the proposition in a negative form. It is not to be denied that very respectable authorities hold the contrary view, but these are in the minority in number and, as it seems to us, hold the more unsatisfactory position.

It is a matter of common knowledge that the constant practice of the commercial world is to pass title to stock in corporations, or impose thereon the burden of collateral obligations, by a simple passing, from hand to hand, of the indorsed paper certificates of stock. Vast volumes of business are transacted upon the faith that such transfer is perfectly good as between the parties thereto who act in good faith, without a formal transfer upon the stock register. We think it is, and so hold. Now, as the court below held as a matter of fact that neither Price nor the Mulvanes were guilty of fraud, and that the Mulvanes paid a full consideration to Price for the stock in question, and as these questions were settled upon the weighing of conflicting evidence by the court, acting within the scope of its authority, we must hold that the transfer from Price to the Mulvanes vested in the Mulvanes, as against Price or any one claiming under him, the full beneficial use and right to the stock, whether such right be called an equitable or legal right, or both, and gave to the Mulvanes the right to have such transfer registered on the stock-books at any time.

We see nothing in the case to require any change of the burden of proof. That burden rests upon the one asserting fraud. Fraud was the gravamen of plaintiff's action. It must be determined upon the entire evidence. These considerations require us to resolve all of the contentions of the plaintiff in error against him.

Complaint is made that a witness introduced by the plaintiff, who had been general manager of the salt company, was not permitted to testify as to the amount of earnings of the company during several years succeeding the time when the Mulvanes became the owners of the stock. It had been shown that the books of the company contained this information. The testimony of the witness was excluded upon the objection of the defendants that such testimony was not the best evidence. We find no error in this. No showing was made why the books were not available, and, if available, they were surely the best evidence of the fact sought to be shown.

The plaintiff was not allowed to show by a witness what Price had said to him about having at one time pledged his stock or portions of it as security for his debts. Such evidence would be hearsay, and, so far as is shown in the record, immaterial. We think it was properly excluded.

There are some other claimed errors arising upon the rejection of evidence. We have examined them all and are satisfied that no error was committed in relation thereto.

A motion for a new trial was filed upon the ground of newly-discovered evidence. The affidavits in support of this ground were made by the attorneys for plaintiff, and covered matters which they believed one John R. Price would testify to upon another trial, which matters Price himself had disclosed to them in conversations had since the conclusion of the trial. These matters were material and probably a sufficient showing of diligence was made. The defendants, however, filed an affidavit of Price denying *in toto* the truth of the matter set out in the affidavits filed by plaintiff, and denying that he would testify to the

matters as set out therein. Thereupon plaintiff had a subpœna issued and served on Price for the purpose of bringing him in to be orally examined upon the hearing of the motion. He did not obey the subpœna and was not present when the motion came on to be heard, because, as he said, he was sick and unable to come. Whereupon the plaintiff asked for an attachment to compel the attendance of Price and a delay of the hearing of the motion until his attendance could be had. This was denied and the motion overruled. It is contended by the plaintiff that the affidavit of Price, denying the facts contained in the affidavits in support of the motion, and denying that he would give testimony as therein claimed, should have been disregarded, and that the affidavit in support of the motion "should have been taken as *prima facie* truth." The statute provides, in regulating the matter of new trials on the ground of newly-discovered evidence, that counter-affidavits may be filed. There can be no reason for this unless the court hearing the motion is required to take them into consideration, to weigh and determine from them all what the reasonable probabilities are as to the effect of the testimony of the absent witness upon the result at another trial. If counter-affidavits were to have no weight, then why permit them to be filed? The court did what it should have done—considered all these conflicting affidavits, and, having considered them, concluded that no good reason existed in them for granting a new trial. In this we think it was right.

Upon a full consideration of all the points in the case, we find no error manifest, and hence affirm the judgment.

All the Justices concurring.