H. J. BARNHOUSE, *Appellee*, v. CHAUNCY DEWEY *et al.,* *as Executors, etc., et al., Appellants.*

No. 16,428.

SYLLABUS BY THE COURT.

1. GIFT—*Inter Vivos*—*Delivery.* To make a complete gift of personal property, *inter vivos*, there must be a delivery of the property from the donor to the donee or to some person for him.

2. ———— *Possession Retained by Donor as Trustee.* Where a donor decides to give to another a certificate of shares in a building and loan association and to make the payments thereon for the donee until maturity, and causes such certificate to be issued in the name of the donee, retaining possession thereof himself, and makes the subsequent payments thereon in the name of the donee, but at all times regards the

Barnhouse v. Dewey.

certificate as the property of the donee and his possession as that of a trustee for such donee, the delivery to himself as trustee of the donee will be held sufficient to complete the gift.

3. STOCK CERTIFICATES—*Assignment—Indorsement in Blank— Possession—Prima Facie Evidence of Ownership.* A certificate of shares in a building and loan association, assigned by indorsement in blank upon the back thereof by the person to whom it was issued, will *prima facie,* as between the parties themselves, constitute the vendee and holder thereof the owner of such certificate.

Appeal from Riley district court. Opinion filed July 9, 1910. Reversed.

*Charles Blood Smith,* and *Samuel Barnum,* for the appellants.

*John E. Hessin,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in the district court of Riley county by the appellee to recover from the appellants the value of a certificate of twenty-five shares of the Manhattan Building and Savings Association. The plaintiff recovered a judgment against the defendants, who represent the estate of C. P. Dewey, deceased, and they appeal to this court.

The certificate in controversy was issued by the association in the name of H. J. Barnhouse, at the request and in the lifetime of C. P. Dewey, who held the certificate and paid assessments thereon until his death, and the representatives of his estate afterward made the payments thereon until October, 1905. It is claimed by Barnhouse that C. P. Dewey intended to give the certificate to him and make all payments thereon until its maturity, as a recognition of the faithful service rendered by the plaintiff as an employee of Mr. Dewey for many years, and that such gift was completed; that at the time of his death Dewey was simply holding the

certificate in trust for the purpose of conveniently carrying out his original intention.

The defendants claim that the rules of the association did not permit the holding of more than twenty-five shares by one person, and that C. P. Dewey, to avoid this rule of the association, took a certificate in the name of Barnhouse, so that he could own more than twenty-five shares, but it was not his intention that Barnhouse should own them or have any interest therein.

The facts relied upon to establish the gift are, briefly stated, substantially as follow: C. P. Dewey was a man of large means, residing in Chicago and managing an extensive business at Manhattan, Kan. H. J. Barnhouse had been an employee of Dewey for several years. On May 21, 1900, Dewey purchased the certificate in question, saying to the secretary of the association in explanation for not taking it in his own name that he wanted to do something for Barnhouse. The certificate was delivered to Dewey by the secretary, and Dewey gave a receipt to the secretary, signed "H. J. Barnhouse, by C. P. Dewey." A pass book was delivered to Dewey with the certificate. The secretary explained that for convenience many shareholders left their pass books with him so he could credit payments therein when made, and in that way the pass book would show at all times the state of the account and would correspond with the books of the association and always be accessible to the shareholder. Dewey handed the pass book to Barnhouse, who was standing near, and he handed it to the secretary. Dewey kept the certificate. He also took a like certificate in his own name, one in the name of his son, and another in the name of C. T. Killen, now one of the executors of Dewey's will, for all of which, except the one to his son, he gave receipts. Barnhouse came into the bank about the time the certificate taken in his name was handed to Dewey. From these facts, and the reasonable inferences which

may be drawn therefrom, the question of gift must be determined.

The theory upon which the plaintiff relies is that Dewey intended to give the certificate to him, that the acts of Dewey while in the bank were such as under the law constituted a completed gift, and that Dewey afterward held the certificate as trustee for the plaintiff. The defendants insist that to constitute a completed gift the thing given must be actually delivered by the donor to the donee, or to some person for him; that, as Dewey never parted with the certificate, there was no delivery, and consequently no gift. The plaintiff concedes the law to be as the defendants claim, but insists that the facts and the legitimate inferences which may be drawn therefrom establish a sufficient delivery to constitute a completed gift. This case has been in this court before, and is reported in 75 Kan. 214. This question of delivery presented great difficulty at that time. Barnhouse contended in that action that Dewey was holding the certificate as trustee for him, but then, as now, there was no proof of a delivery except as stated. Dewey had never parted with possession. The case was reversed and sent back for a new trial. In speaking of this difficulty, as liable to be encountered in the new trial, the court said:

"Before a gift can be found in this case it must appear from the evidence that at sometime during the transaction in the bank Dewey determined to give the stock to Barnhouse, and instead of delivering it to the latter, although present, and presumably willing to receive and accept it, concluded to constitute himself the trustee of Barnhouse, and thereupon, as donor, delivered the stock to himself, as trustee, receiving and accepting it as trustee for Barnhouse. Whether such delivery is shown by the evidence is a question of fact for the determination of the jury, and great care should be taken by the court, both in the admission of evidence and in its instructions, to have this question of delivery clearly presented to the jury, and thereby

avoid mistake or misconception of the real merits of the inquiry." (*Dewey v. Barnhouse,* 75 Kan. 214, 221.)

The jury, when the case was retried, returned special findings of fact upon this point which read:

"Ques. Did Charles P. Dewey, while in the bank, determine to give to Barnhouse the stock in controversy? Ans. Yes.

"Q. Did Charles P. Dewey, at the time of the transaction in the bank, conclude to constitute himself a trustee for Barnhouse? A. Yes.

"Q. Did Charles P. Dewey, as donor, deliver the said stock to himself as trustee, receiving it and accepting it for Barnhouse? A. Yes."

The court, at the conclusion of the trial, not being satisfied with the findings of the jury, made findings of fact for itself, which in this matter were substantially the same as the findings of the jury, except fuller and more explicit. So far as the findings of the court are material upon this point, they read:

"(1) That prior to the 21st day of May, 1900, the plaintiff, H. J. Barnhouse, had been for many years the manager and confidential employee of the late Charles P. Dewey, and that during about the same period one Charles T. Killen had been the bookkeeper and confidential employee of the said Charles P. Dewey, and that there existed such friendly relationship between the said Charles P. Dewey and the said Barnhouse and Killen as to cause the said Charles P. Dewey to contemplate and finally determine to advance and better their condition by making them a gift of some substantial character, and that on the said 21st day of May, 1900, the said Charles P. Dewey had a conversation with George S. Murphey, the secretary of the corporation known as the Manhattan Building and Savings Association, and from said Murphey learned all of the requirements and conditions upon which a stock investment in said company could be made and the limitations of stock permitted under the by-laws of said association to be held by any one individual.

"(2) That after considering the information derived from said Murphey as to the conditions and method of business transactions of the Manhattan Building and

Savings Association, and considering his desires, long manifested, to favor and advance the interests of said Charles T. Killen and the plaintiff herein, H. J. Barnhouse, the said Charles P. Dewey arrived at the intention then and there to make a gift to the said H. J. Barnhouse, and at the same time to the other employee, Charles T. Killen, each of a $2500 share interest in the Manhattan Building and Savings Association, intending at said time to give to the said parties such interest in said association, and so long as he should continue in that mind to pay into the said association each month the dues necessary to maintain said interest in the association.

"(3) That, carrying out said intent upon his part, he thereupon ordered the proper officers of the Manhattan Building and Savings Association to issue to said H. J. Barnhouse $2500 of the stock and the necessary pass book and contracts by which the said H. J. Barnhouse became the owner of a $2500 stock interest in said association, and that he manually delivered at said time to the said H. J. Barnhouse the pass book containing the receipt for the membership payment and the first five months' payments upon said stock; and that later, when the certificate of stock was prepared by the proper officers of the association, the same being written in the name of H. J. Barnhouse, the said Charles P. Dewey receipted to the said building and savings association for the said stock in the name of H. J. Barnhouse, and as the agent of the said H. J. Barnhouse, as he did likewise for the stock prepared in the name of Charles T. Killen, and also for stock prepared for himself, and that at the time of so receipting for the said stock of the said Barnhouse and Killen he determined and concluded to constitute himself as the custodian, agent or trustee for the safekeeping of the said certificate of stock, and that thereafter he did keep said certificate of stock among his papers in his safety-deposit vault in Chicago, Ill., up to the time of his death.

"(4) That said certificate of stock does not appear to have been in the manual possession of H. J. Barnhouse at any time, further than that the same appears to have the signature of H. J. Barnhouse indorsed in blank on the back of said certificate; the purpose and reason of such indorsement is not made to appear or in

any manner explained in this case, other than that the same was not done for the purpose of selling the same to C. P. Dewey, or any other person."

Under these facts, found both by the court and jury, we are unable to say that there is no evidence to support the conclusion that there was a completed gift of the certificate by Dewey to Barnhouse. It was, therefore, the property of Barnhouse.

It appears, however, that Barnhouse afterward assigned the certificate by indorsement in blank, and left it in the possession of Dewey, among whose private papers it was found after his death. It is claimed that the possession of such paper so indorsed is *prima facie* evidence of ownership, and that it must be presumed in the absence of evidence to the contrary that Barnhouse indorsed the certificate intending that such indorsement should perform the ordinary purpose of an indorsement, to wit, to transfer the ownership of the paper, and that the title to the certificate thereby passed from Barnhouse to Dewey and has been his property since. In section 4317 of volume 4 of the second edition of Thompson on Corporations it is said:

"The usual and perhaps the more generally employed method of transferring shares of stock is by the delivery of the certificate with the assignment indorsed thereon, duly signed by the person named in such certificate. This is sufficient ordinarily to transfer the title of the original holder to the assignee. In other words, corporate stock is transferred as to the parties thereto by indorsement and delivery of the certificates. It is a good assignment of shares of stock to deliver the stock thereof, with a blank transfer on the back, to which the holder has affixed his name; and the party to whom it is delivered is authorized to fill such blank indorsement. It has been said that the possession of certificates with a power to transfer them was *prima facie* evidence of title."

This subject is fully discussed in the sections follow-

Barnhouse v. Dewey.

ing that just quoted. In the case of *Culp v. Mulvane,* 66 Kan. 143, the second syllabus reads:

"Under the statutes of this state the stock of a private corporation is subject to a valid transfer as between the grantor and grantee by a delivery of the certificate of such stock indorsed in blank, with a purpose thereby to make such transfer. Neither the formal transfer of such stock upon the stock book of the corporation nor the issuance of certificates to the purchaser is essential to the valid transfer thereof as between the parties thereto or those claiming under them."

In the opinion is was said:

"Certificates of stock are frequently spoken of as securities, but they are not such, in the proper signification of the term. They have none of the characteristics of negotiable paper; they are simply paper evidences of the right of the holder to the interest in the corporation described in them. While they are nonnegotiable, in the ordinary acceptation of that term, yet they possess one of the attributes of negotiable paper, that of being assignable as between vendor and vendee, pledgor and pledgee, by simple delivery when properly indorsed, and when thus transferred pass the title to the extent intended by the parties thereto as between such parties, not only to the paper evidence of title, but to the shares of stock themselves. The authorities extend this rule no further. As against the corporation itself and third parties claiming rights under the corporation, of course this rule would not obtain. Indeed, it has been held that a provision in the governing statute, declaring that no transfer of corporate stock shall be valid for any purpose until such transfer shall have been entered on the books, must be limited in its application to the objects sought to be accomplished by the statute, which objects refer to matters growing out of the stockholder's relation to the corporation and its creditors, and does not make invalid an unregistered transfer, as between vendor and vendee. (*Johnson v. Underhill et al.,* 52 N. Y. 203.)

"The foregoing views are fully sustained by the dis-

cussion found in Thompson on Corporations, section 730, and Cook on Corporations, section 381.

"In *Plumb v. Bank of Enterprise*, 48 Kan. 484, this court has substantially taken the same view by approaching the proposition in a negative form. It is not to be denied that very respectable authorities hold the contrary view, but these are in the minority in number and, as it seems to us, hold the more unsatisfactory position.

"It is a matter of common knowledge that the constant practice of the commercial world is to pass title to stock in corporations, or impose thereon the burden of collateral obligations, by a simple passing from hand to hand of the indorsed paper certificates of stock. Vast volumes of business are transacted upon the faith that such transfer is perfectly good as between the parties thereto who act in good faith, without a formal transfer upon the stock register. We think it is, and so hold." (p. 152.)

The case of *Van Demark v. Barons*, 52 Kan. 779, is to the same effect. In the case of *Brittan v. Oakland Bank of Savings*, 124 Cal. 282, it was held, as reported in a headnote in 71 Am. St. Rep. 58:

"It is a good assignment of shares of bank stock to deliver the certificate thereof, with a blank transfer on the back of it, to which the holder has affixed his name. The party to whom it is delivered is authorized to fill up the blank indorsement." (p. 59.)

In the case of *Parker v. Bethel Hotel Co.*, 96 Tenn. 252, it was said:

"A sale or transfer of stock, to be valid, need not be in writing. The certificate need not, in fact, be delivered. A transfer is perfectly good, although the seller of the stock never had a certificate at all, and although no certificate is issued to the transferee. An indorsement on the certificate, while not necessary, is the preferable and most convenient form of transfer, because the same instrument then combines the evidence of the seller's right to the stock and of his transfer to the purchaser. Lowell's Transfer of Stock, §§ 43, 44." (p. 283.)

In the case of *Supply Ditch Co. v. Elliott,* 10 Colo. 327, it was said:

"Certificates of stock are assignable, and pass from hand to hand by indorsement, as bills of exchange and promissory notes pass, and holders of such certificates are *prima facie* presumed to be the *bona fide* owners thereof, and an innocent purchaser thereof for value will hold them against the true owner, where the latter has placed it in the power of the assignor to perpetrate a fraud upon the innocent assignee. (p. 333.)

When these decisions are applied to the facts of this case the contention of the defendants does not seem to be unreasonable. The certificate in question was the property of Barnhouse and was being held in trust for him by C. P. Dewey, in whose possession it was. Why did Barnhouse assign it in blank and leave it with Dewey? What purpose consistent with the continued ownership of Barnhouse could such assignment serve? It must be remembered that the parties to this transaction were men of more than ordinary business capacity. Barnhouse had been the trusted employee of Dewey, and for years his business manager. It seems reasonable to presume that they understood the business effect of the indorsement when it was made, and intended it to have that effect. The indorsement was made in the handwriting of Barnhouse. The relations between these men were friendly; it can not be supposed that either intended to mislead or deceive the other. The evidence shows that Dewey had for years taken deeds, mortgages and other instruments in the name of Barnhouse and other employees, temporarily, and then caused conveyances thereof to be made to himself. Was this such a transaction?

It does not appear that Barnhouse ever regarded this certificate as his property; he made no inquiry as to whether payments were being made upon it or not, and did not at any time manifest any concern about it, although he was discharged from Dewey's employ-

ment more than a year before Dewey's death. The conduct of both parties seems more consistent with the conclusion that the indorsement of Barnhouse was intended to effect a transfer of the certificate to Dewey than to accomplish any other or different purpose. The facts and the law seem to point to the same conclusion, and we think that, in the absence of proof to the contrary, it must be held that from and after the indorsement of the certificate by Barnhouse it became and continued to be the property of Dewey. This legal conclusion is the necessary result of the unexplained voluntary indorsement of Barnhouse, and is also the natural and reasonable inference to be drawn from the evidence. It follows that the judgment in favor of Barnhouse was erroneous, and it is reversed.

JOHNSTON, C. J. (dissenting) : The trial court, as well as the jury, found that there was a completed gift of the stock by Dewey to Barnhouse, and in the prevailing opinion it is stated that the proof tends to sustain the finding of a donation and delivery of the stock. The only question left for determination is whether the stock, which was in the possession of Dewey when he died, had been sold and transferred to him by Barnhouse, or whether he was only holding it as trustee for Barnhouse. The trial court made a finding, based on supporting testimony, that Dewey constituted himself a custodian, or trustee, for the safe-keeping of the certificate of stock. The decision of this court that he was not holding the stock as trustee rests only upon the blank indorsement on the back of the certificate and his possession of the same. The indorsement and delivery of a certificate may operate as a transfer of the stock if that was the intention of the parties. The intention of the parties here depends not on the indorsement alone, but upon all of the testimony. The blank indorsement is not inconsistent with the theory that Dewey took the cer-

Barnhouse v. Dewey.

tificate in order to hold the stock as trustee for Barnhouse. From the evidence it appears that Dewey stated to the secretary of the association that Barnhouse, who was his manager, was only receiving a small salary and that he intended to take care of him. After making inquiry of the secretary as to the plan on which the stock was issued and sold, Dewey again stated that he wanted to do something for Barnhouse, and asked the secretary to write up twenty-five shares for Barnhouse and arranged that the monthly payments on them should be charged to him. He receipted for the shares in Barnhouse's name, and when the pass book was issued he turned it over to Barnhouse, saying "Here is your pass book." The shares stood on the books in the name of Barnhouse, the accounts were kept in his name, and no transfer of the stock was ever made in the presence of the president or secretary, as the by-laws of the association required. It is conceded that there was a consummated gift to Barnhouse. The stock actually became his property. When did he lose it? Although the blank indorsement is not explained, the testimony is that he never sold the stock to anyone, and the trial court found that he did not indorse it for the purpose of selling it back to Dewey. An indorsement of a certificate is some evidence of an intention to transfer ownership of the stock, but it is not conclusive evidence of such a transfer. As was said in *Culp v. Mulvane,* 66 Kan. 143:

"The stock is something apart from the certificates. These but evidence a fact which otherwise exists. They are but paper representations of an incorporeal right, and, as such, resemble other muniments of title. The right of stock may exist entirely separately and independently of the certificates." (p. 151.)

The ownership of the stock is not determinable absolutely by either the indorsement of the certificate or the possession of the same. On all the facts and circumstances brought out in the evidence the trial court

found that Dewey took the stock with the intention to hold it as trustee for Barnhouse. This court can not weigh the evidence or determine which of the items of testimony is the most worthy of belief. In the prevailing opinion it is said that the contention of the defendants that the indorsement of the certificate indicated an intention to transfer title "does not seem to be unreasonable," but to the trier of the facts it did seem unreasonable. On the other hand, the trial court found that the inference is entirely reasonable. In another part of the opinion it is said "the conduct of both parties seems more consistent with the conclusion that the indorsement of Barnhouse was intended to effect a transfer of the certificate to Dewey than to accomplish any other or different purpose," but the trial court, after balancing the manifestations of intention, drew a different inference and reached the conclusion, as it had a right to do, that the conduct of the parties was more consistent with the theory that Dewey accepted and was holding the stock as the trustee for Barnhouse. In the opinion on the first review this court stated with some particularity what was necessary to be proved in order to establish a gift and a trusteeship in Dewey, and the plaintiff appears to have met these requirements. In my view the mere circumstance that there was a blank indorsement on the certificate which was in the possession of Dewey does not overcome all the other testimony on the subject, nor overthrow the finding of the trial court.

Mr. Justice MASON concurs in this dissent.