The State v. Doe.

No. 24,865.

STATE OF KANSAS, *Appellee,* v. JOHN DOE, alias WALTER LEE SCOTT
(who says his real name is HARRY STANLEY), *Appellant.*

SYLLABUS BY THE COURT.

MOTION FOR NEW TRIAL—*Misconduct of Jurors—Conflicting Evidence—Finding of Trial Court Conclusive.* Where the question submitted to the district court upon a motion for new trial was the misconduct of members of the jury, upon which there was competent but conflicting testimony, part of which was oral, the finding of the trial court will be accepted as controlling in this court.

Appeal from Cowley district court. OLIVER P. FULLER, judge. Opinion filed March 8, 1924. Affirmed.

*H. S. Hines,* of Arkansas City, for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general, and *C. H. Quier,* county attorney, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant was convicted of the theft of an automobile and appeals. The only error alleged here is the misconduct of two jurors, Orahood and Maris.

With reference to juror Orahood, defendant, on a hearing of his motion for new trial, offered the affidavit of one Hutton, who had been a witness for the defendant on the trial. The affidavit stated, substantially, that, on the morning following the first day of defendant's trial, and before the second day, Hutton met Orahood; that Orahood stated to him that the defendant would be found guilty; that Ed. Wright, mentioned in the testimony, was "an all-round crook" and if defendant went to his place "he was out on a crooked deal." On the other hand, Orahood being called as a witness on the motion for new trial, testified, substantially: that, on the meeting with Hutton, Hutton said, "They will have to change their dates. He couldn't have got down to Tulsa from up there without a flying machine"; that he (Orahood) remarked, "I am a juror on this case. I can't talk about it," and started to walk off. "He [Hutton] followed me up the street a little ways in front of the pool hall south. He said something about the case—about they couldn't convict him—something like that."

With respect to the juror Maris, the defendant introduced affi-

davits of Earl Smith and Clarence Wade, and the oral testimony of Harry Oldroyd, the complaining witness in the case, while the state introduced the oral testimony of the juror Maris.

The affidavits of Smith and Wade showed substantially that they were in the court room; that they heard Harry Oldroyd, the complaining witness, state to Harry Maris (before his selection as a juror) that "they had the right man," that there was considerable discussion of the merits of the case tending to direct, attention to the commission of the offense by the defendant; that Oldroyd pointed significantly to a person about thirty feet removed from Smith and Wade, known to them as the defendant; that they were impressed with the idea that Oldroyd desired Maris to know that he meant the defendant; that Maris was thereafter chosen as a juror in the case. The defendant then introduced testimony of Mr. Oldroyd.

"Q. Mr. Oldroyd, do you remember this morning before the jury was impaneled of being in the court room?  A. Yes, sir. . . .

"Q. Did you and Mr. Maris have a conversation that mornnig?  A. Yes, I think we did.

"Q. In this conversation did you point out the defendant to him?  A. Yes, sir.

. . . . . . . . . . . . .

"Q. You don't remember whether you did say to him, 'We have the right man'?  A. I did not.

"Q. You don't think you said that,  A. I am sure I did not."

The testimony on behalf of the state as to misconduct of Maris was substantially:

"Mr. Maris.  Direct examination:

"Q. Did you and Harry Oldroyd have any conversation at that time relative to Harry Stanley [defendant] that you recollect?  A. Not as I would know Harry Stanley now, no.

"Q. Was any part of the evidence spoken of?  A. Nothing in the world.

"Q. You asked to have these two defendants pointed out?  A. Yes, sir, I might have.

"Cross-examination:

"Q. Isn't it a fact that you talked to Mr. Oldroyd about that matter and about him having been to Salisaw to bring the men back?  A. No.

"Q. Do you remember whether or not Mr. Oldroyd said, 'We have the right man'?  A. No, I don't remember that.

"Q. You don't remember whether it was discussed or not?  A. It was not discussed.

"Court: Q. Are you certain you didn't hear Mr. Oldroyd say, 'That is the man; we have the right man'?  A. No, no talk of that kind whatever.

"Q. Nothing of that kind happened?  A. No."

We have examined the record and find nothing stated or done by the jurors in question which in any way prejudiced the rights of the defendant. Furthermore the question was one of fact determined by the trial court.

In 3 Cyc. 366, 367, it is said:

"When the determination of questions in the course of a cause, of motions, or other special proceedings depends upon facts laid before the court, its decision is, ordinarily, governed by the same rules relating to findings of fact, generally. If the evidence is conflicting or there is evidence to sustain the finding the appellate court will not interfere unless the finding is clearly erroneous . . . So, of the finding upon a challenge of a juror and of the determination of facts upon conflicting evidence on a motion for a new trial."

In 29 Cyc. 1031, this language is used:

"Orders of trial courts allowing new trials are more favorably considered by appellate courts than orders refusing them. But the determination of the motion upon conflicting evidence or upon affidavits and counter affidavits creating a conflict of evidence will be treated as other decisions upon facts based upon conflicting evidence, and ordinarily will not be disturbed."

In *The State v. Tatlow,* 34 Kan. 80, 8 Pac. 267, it was said:

"Where the question submitted to the district court upon a motion for new trial was the alleged intoxication of a member of a jury while the case was on trial, and upon which there was competent but conflicting oral testimony, the finding of the trial court thereon will be accepted as controlling in this court." (Syl. ¶ 2.)

In *Culp v. Mulvane,* 66 Kan. 143, 71 Pac. 273, it was said:

"Upon the hearing of a motion for a new trial on the ground of newly discovered evidence, it is proper for the court to consider affidavits for and against the same. Where such affidavits are contradictory upon the facts, this court will not disturb the finding of the trial court, unless it shall appear that an abuse of discretion exists." (Syl. ¶ 5.)

In *Yurann v. Hamilton,* 82 Kan. 528, 108 Pac. 822, it was said:

"On a motion for a new trial, based on alleged accident and surprise growing out of an alleged agreement as to a waiver of evidence between the attorneys for the parties, the finding of the court as to the existence of such agreement, made upon conflicting affidavits, and the denial of the motion in accordance with such finding, cannot be reviewed here." (Syl. ¶ 2.)

In *Pittman Co. v. Hayes,* 98 Kan. 273, 157 Pac. 1193, it was said:

"And thus it is that month by month and year by year in this court and in other courts of appeal, the elementary rule has to be restated that the decision of the trial court on matters of fact based upon substantial though conflicting testimony cannot be disturbed." (p. 277.)

The judgment is affirmed.