T. J. CALVIN, *as Administrator, etc.*, v. MARY E. FREE.

No. 13,032.    (71 Pac. 823.)

SYLLABUS BY THE COURT.

1. GIFTS — *Causa Mortis* — *Requisites*. To constitute a gift *causa mortis*, the gift must be made in contemplation of the near approach of death, to take effect absolutely only upon the death of the donor and before that of the donee. There must be a delivery of the property to the donee or some one for him. Subject to the right of recall in case he does not die, or in case the donee dies first, the donor must part with all dominion over the donated thing.

2. —— *Inter Vivos* — *Requisites*. To constitute a gift *inter vivos*, there must be a gift absolute and irrevocable, taking effect immediately, the donor delivering the property to the donee or some one for him, and parting with all future dominion over it.

3. —— *Inter Vivos* — *Control may be Surrendered*. If, upon the delivery of the property in a gift *inter vivos*, the donor retains some control over it, the gift being thereby rendered incomplete, the donor need not, in order to complete it, retake the property into his possession and again deliver it with the restrictions removed, but may make the gift complete by surrendering the control he had retained.

4. —— *Promissory Notes—Gift Through Trustee.* A delivery of the promissory notes of another by the donor to a trustee, with direction to collect, and, when collected, to distribute the proceeds among named *cestuis que trust*, is a good gift *inter vivos.*

Error from Labette district court; A. H. SKIDMORE, judge.   Opinion filed March 7, 1903.   Affirmed.

*R. W. Blue,* and *W. B. Glasse,* for plaintiff in error.
*A. D. Neale,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: This was an action in replevin by Calvin, as administrator of the estate of John G. Martin, deceased, to obtain possession of two promissory notes admitted to have been the property of the said Martin in his lifetime, and in the possession of the defendant in error at the bringing of the action. The defendant claimed them as a gift from the deceased, either *causa mortis* or *inter vivos.*   The facts are undisputed and appear in the following extracts from the evidence of Mrs. Free:

"Ques. Did you know John G. Martin, who is now dead? Ans. I did. He was my uncle.

"Q. Did you see him on the day that he died? A. I did.

"Q. And a week or ten days before the day that he died, did you have any talk with him about some notes? A. I had n't much talk, no, sir; he did.

"Q. Did he talk with you about some notes? A. Yes, sir.

"Q. Did he hand to you any notes at that time? A. He did. (The witness then identified the notes in question.)

"Q. Did he say anything to you on that occasion about collecting these notes? A. He gave them to me; he told me to keep them, and when they became due to collect them and give them to his children.

"Q. Did he at that time tell you what children to

give the money to after you had collected it? A. Not at that time; no.

"Q. On the day of his death, did you have any talk with him, or did he talk with you upon the subject of these notes again? A. He told me he wished me to give $300 to his daughter, Mrs. Phillips. A deceased son had been married twice, and he has three children to his first wife that was dead, and three children to the second wife. He wished me to give $100 to each of these oldest children of this deceased son that was dead, and the remainder to be divided equally between his three living sons and all of the children of this deceased son, counting these three that had $100 apiece.

"Q. What was the condition of his health at the time of the first conversation, when you talked with him at your home? A. He was going around, able to do his chores, and able to go down town after his mail every day.

"Q. Do you remember at what time in the day he died? A. He died about two o'clock in the afternoon.

"Q. How long before his death was the last conversation which you have mentioned? A. About an hour before he died.

"Q. In the first conversation he did not tell you how to divide the money when it was collected? A. No, he did not.

"Q. But in the last conversation he did tell you? A. Yes."

Upon cross-examination she testified:

"Ques. Mrs. Free, you were holding these notes that have been described to you as the property of these children, were you? Ans. Yes, sir.

Q. Mr. Martin told you, Mrs. Free, when he gave you these notes, that he desired you to hold these notes for the children, did n't he? A. He did."

Upon redirect examination she again testified:

"Ques. I will ask you to again state to the jury what your uncle told you in the first conversation you had with him about these notes? Ans. Why he

stopped at my home and he handed me the notes, and says, 'I want you to take these notes and keep them until they become due; then collect them and divide them among my children.'

"Q. Then at the last conversation you had with him, he told you how to divide the money—who to hand the money to after you had collected it? A. Yes, sir; how to divide it."

There was no evidence going to show that either of these conversations was had at a time when Mr. Martin was in expectation of death, or that the gift was made by him in view of death, although he died about an hour after the last conversation. The court sustained a demurrer to this evidence, thereby holding that the notes belonged to Mrs. Free, as trustee; and not to the estate of Mr. Martin.

Under the above statement of facts we are called upon to decide whether the transactions narrated amounted to a gift either *causa mortis* or *inter vivos;* if either, then the court was right; if neither, then it was wrong.

"A gift *causa mortis* is a gift of personal property made in the immediate apprehension of death, subject to the conditions, expressed or implied, that if the donor should not die as expected, or if the donee should die first, or if the donor should revoke the gift before death, the gift shall be void." (14 A. & E. Encycl. of L., 2d ed., 1052.)

To this definition there probably should be added the further condition, that there must be a delivery of the property to the donee, and that no further act would be required on the part of the donor to pass title to the donee.

Under this definition, it seems quite clear that the transactions narrated by Mrs. Free do not constitute a gift *causa mortis*, the essential element of immediate

apprehension of death not being present. At this first conversation, when the notes were actually handed over to her, it does not even appear that he was frail or in failing health; much less that he was in apprehension of death. As to the second conversation, so far as the evidence shows, he was in equally good health, although he died about one hour subsequently thereto; but his death may have been, so far as is shown, of a sudden and unexpected character. We conclude that this was not a gift *causa mortis*.

"To constitute a valid gift *inter vivos*, there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately, and fully executed by a delivery of the property by the donor and acceptance thereof by the donee." ( 14 A. & E. Encycl. of L., 2d ed., 1015.)

This definition implies that the donor must, at the time of making the gift, part with all dominion over it; that he cannot make a valid gift of this character and yet retain to himself the right to recall or redirect it. The gift must be absolute and irrevocable.

It is claimed by the plaintiff in error in this case that, as Mr. Martin, at the time of the first conversation, when the notes were delivered to Mrs. Free, gave only the general direction that the proceeds of the notes when collected should be disposed of among his children, without indicating in what shares or amounts disposition was to be made, and that thereafter, in the second conversation, he supplied this omission, the gift when made was incomplete, and lacked the element of finality; hence, it did not amount to a gift *inter vivos*. Two views of the transaction may be taken, either of which would defeat this claim : First, that by the first conversation, the direction being a general one, the title to the property passed to all of the *cestuis que trust* in equal shares,

and that the second direction was but an indication of the wishes of the deceased, rather than an assumption of right to control, and really did not have the effect to control or change the general direction already given.   Second, that the first and second conversations should be construed as operating together ; that, if any right to control was retained at the time of the first conversation, and the gift made thereby incomplete, such right was surrendered and the gift completed by the second conversation.   We are inclined to the second view.

It is settled law that where the donee has possession of the subject of the gift, the donor yet retaining some dominion over it, there is no need, if the donor shall desire to surrender such reserved rights, first to retake the property into his possession, and then redeliver it to the donee with a full surrender ; but it is sufficient, to complete a formerly incomplete gift, for the donor to make final surrender of, or direction concerning, it, the donee all the while retaining possession.   (14 A. & E. Encycl. of L., 2d ed., 1019.) Indeed, it seems that delivery in no case need be simultaneous with the gift in order to its validity, but such delivery may either precede or follow.   (14 A. & E. Encycl. of L., 2d ed., 1026.)

Some question is raised as to whether a valid gift *inter vivos* may be completed by placing the subject of the gift in the hands of a trustee.   The law, however, is well settled upon this subject, that it can be, providing, of course, that the trustee holds it for the benefit of the *cestuis que trust*, and not the donor.   A gift to a trustee has necessarily coupled with it some power or duty.   The trustee is interposed by the donor between himself and the donee for the accomplishment of some purpose — to do something relative

to the gift in behalf of the donee.    So it is entirely competent to make a valid gift even of choses in action, including promissory notes, with the direction that the trustee collect and divide the proceeds in accordance with the terms of the gift.    (14 A. & E. Encycl. of L., 2d ed., 1026.)

We think the evidence shows a complete gift *inter vivos* of the notes in question.    Therefore, they were rightfully in the possession of Mrs. Free.

The judgment of the trial court must be affirmed.

All the Justices concurring.