J. J. MAHONEY V. JOSEPH MARTIN, *as Guardian, etc.*
No. 14,337.   (83 Pac. 982.)

SYLLABUS BY THE COURT.

GIFT—*Acceptance—Presumption—Question of Fact.* Acceptance by the donee is necessary to constitute a gift. The presumption of acceptance on the part of the donee, sometimes indulged by the law, is a presumption of fact, and becomes effectual only in the absence of evidence. Where such acceptance is disputed a question of fact arises, which must be determined upon the evidence presented.

Error from Saline district court; ROLLIN R. REES, judge.   Opinion filed December 9, 1905.   Affirmed.

*Z. C. Millikin,* for plaintiff in error.

*R. A. Lovitt,* and *C. W. Burch,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The question involved in this case is whether or not the property in controversy was transferred to the plaintiff in error by virtue of a completed gift. Mary A. Martin, the alleged donor of the property, was at the time of her death the wife of

Mahoney v. Martin.

Peter Martin, who was insane; and he took by descent whatever property his wife had at the time of her death.

Peter Martin had property in his own right sufficient for his comfortable support, and his wife did not want her property to go to the relatives of her husband, which result would follow if she should not outlive him. In the month of March, 1903, she was very sick and expected to die. Her nearest relatives were a brother, the plaintiff in error, who lived in North Dakota, and a sister, who resided in Canada. The brother was present during her last sickness, and she desired to leave her property to him. She knew that she could not, by will, prevent one-half of it from going to her husband, and at his death to his relatives, and she therefore sought the advice of a lawyer for some legal way to carry out her wish. Upon such advice she executed and delivered to her brother the bill of sale hereinafter set forth. Soon afterward she died. A controversy thereafter arose between her brother and the guardian of her insane husband concerning the ownership of the property, which resulted in the bringing of this suit by the brother.

Among the assets of Mary A. Martin was a claim against the estate of her insane husband. The guardian of Peter Martin reduced all of the property of Mary A. Martin to possession and claimed that his ward was the owner thereof.

This suit was brought for an accounting and for the value of the property. Upon the trial, which was had without a jury, the court found and filed findings of fact and its legal conclusion as follow:

"FINDINGS OF FACT.

"(1) That Mary A. Martin died intestate on the 26th day of March, 1903, without issue.

"(2) That at the time of her death said Mary A. Martin was the wife of Peter Martin, an insane person, and the guardian of his estate.

"(3) That said Mary A. Martin left surviving her,

besides her husband, a brother, J. J. Mahoney, the plaintiff in this suit, and one sister.

"(4) That for a long time prior to her death the said Mary A. Martin claimed that there was a large balance due her for services as guardian of such estate, a part of which it was claimed had been allowed by the probate court. The validity of this claim or the amount thereof was not considered at this hearing, the case being tried upon the single issue as to whether the plaintiff was entitled to an accounting.

"(5) That on the 28th day of March, 1903, the defendant, Joseph Martin, was, by the probate court of Saline county, duly appointed guardian of the estate of Peter Martin, insane, to succeed said Mary A. Martin, deceased, and, thereupon, duly qualified and entered upon the discharge of his duties as such guardian.

"(6) That said Mary A. Martin was sick from January, 1903, until the time of her death.

"(7) That the plaintiff lived in Langdon, N. Dak., and that he visited his sister in January, 1903, staying with her a few weeks, and returned home, but came back again about the 25th of February, 1903, and remained with her until her death.

"(8) That during her last sickness said Mary A. Martin sent the plaintiff, Mahoney, to consult her lawyer, Z. C. Millikin, for advice concerning the manner of disposing of her estate, and, returning, Mahoney reported to her that Millikin had advised that she could dispose of all of her property by gift during her life, but that such gift must be unconditional and absolute, and have immediate effect, and that this communication was made to her a few days prior to the execution of the written instrument hereinafter set out.

"(9) That Mahoney had Millikin prepared an instrument, a copy of which is set out in finding No. 10, the name of the donee being left blank and the date of the month appearing as February, instead of March; that afterward, in the presence of William T. Greenwood, on the 5th day of March, 1903, after having inserted his name as donee and after having changed the month from February to March, the plaintiff presented this instrument to Mary A. Martin while she was lying in bed and told her that it was a bill of sale of all of her property to him; that Mary A. Martin

took the instrument, and after looking at it for about two minutes said, 'It is all right,' and then signed it and returned it to Mahoney, who handed it to Greenwood to witness it, and, after Greenwood had witnessed the execution of this instrument he returned the same to the plaintiff, who has had possession of it ever since.

"(10) That such instrument was in words and figures as follow, to wit:

"'BILL OF SALE OF PERSONAL PROPERTY.—Know all men by these presents, that Mary A. Martin, in consideration of one dollar and other consideration (dollars) paid by J. J. Mahoney, the receipt whereof is hereby acknowledged, does hereby grant, sell, transfer and deliver unto the said J. J. Mahoney the following goods and chattels, viz.: One promissory note for $1100 or more, secured by a real-estate mortgage executed by Thomas Holmes and wife, and all property of every kind and description now owned by me or in which I am in any wise interested, and wherever situated, to be held by him absolutely. To have and to hold, all and singular, the said goods and chattels, to the said J. J. Mahoney and his executors, administrators, and assigns, forever. And the said grantor hereby covenants with the said grantee that she is the lawful owner of said goods and chattels; that they are free from all encumbrances; that she has good right to sell the same as aforesaid; and that she will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"'In witness whereof, the said grantor has hereunto set her hand, this 5th day of March, A. D. 1903.    MARY A. MARTIN.

"'Signed and delivered in presence of W. T. Greenwood.'

"(11) That no consideration was paid to Mrs. Martin for such transfer, and that, if it operated at all, it was as a gift and not a sale.

"(12) That at the time of the execution of said written instrument Mary A. Martin was of sound mind and in the full use of her mental faculties, and was able to read the English language.

"(12½) That at the time of the execution of such gift said Mary A. Martin expected to die within a short time, and such gift was made by her in contemplation of approaching death.

"(13) That Mahoney did not fully make up his mind whether to accept such gift or not until after the death of Mrs. Martin, but it does not appear that he repudiated it or expressed any active dissent.

"(14) That finding No. 13 is based entirely on the testimony of J. J. Mahoney, viewed in the light of the surrounding circumstances, as disclosed by the other findings of fact.

"(15) That immediately after the gift the plaintiff

asserted a claim of ownership to a little mare by virtue of such gift, and visited the probate judge for the purpose of getting possession of the note described in such instrument, and to ascertain the balance due from the estate.

"(16) That after the death of Mary A. Martin the plaintiff, claiming under said written gift, attempted to take possession of a certain organ, claiming that it had formerly belonged to Mrs. Martin, but, upon being informed that it had not belonged to her, made no further effort to take it.

"(17) That the supposed indebtedness from said estate to Mary A. Martin was not evidenced by anything capable of a manual delivery, and that no delivery of such property was made, except in so far as the delivery of such written gift operated as a constructive delivery."

"CONCLUSION OF LAW.

"That said written instrument purporting to be a gift of all her property from Mary A. Martin to J. J. Mahoney is void and of no effect, and that the judgment of this court should be for the defendant."

It is apparent from these findings of fact that Mary A. Martin felt that her death was at hand, and in contemplation of this fact she wanted to dispose of her property so that her brother would have it after her death. In case of her death the brother intended to take the property. It is easy to deduce these conclusions from the findings of the court, but they do not constitute a completed gift.

The court evidently based his conclusion of law upon finding of fact No. 13, which finding is vigorously attacked by the plaintiff in error. It is urged that this finding is not sustained by the evidence, is contrary to the evidence, and inconsistent with the other findings of fact.

No gift can be complete without the acceptance thereof by the donee. (*Calvin v. Free,* 66 Kan. 466, 470, 71 Pac. 823; 14 A. & E. Encycl. of L. 1015.) The law presumes such acceptance in the absence of evidence to the contrary. When this fact is disputed its

Mahoney v. Martin.

determination will depend, like any other question of fact, upon the evidence. In this case the question of acceptance was one of the important points in dispute. The court found from the evidence that the donee did not accept the gift during the life of the donor.

The evidence upon this subject, as it appears in the record, seems to be strongly against this finding, and, if it were an original question here, depending upon the testimony presented to us, we would be inclined to decide otherwise. At the same time there is some reason for the conclusion that only a gift *causa mortis* was intended by both parties. There was no reason why Mrs. Martin should wish to part with all of her property while living, and it seems probable that her brother did not expect to take it if she recovered. It appears more reasonable that they each intended the gift to become absolute upon her death, and not before. It also appears from the record that the plaintiff, upon a former trial involving this same question, gave testimony inconsistent with his evidence at the trial of this case.

In view of the fact that the witness was present in court during his examination and cross-examination as to this discrepancy in his testimony, and the court had an opportunity to note his appearance and demeanor on the witness-stand, which at times furnishes strong evidence of the good faith and honesty of a witness, or the want of it, not discoverable from the written testimony given, we feel bound to adhere to the oft-repeated rule that a finding of fact resting upon conflicting or inconsistent evidence cannot be disturbed by this court, and, therefore, the finding is sustained.

This conclusion makes it necessary to affirm the judgment, and it is so ordered.

All the Justices concurring.