C. A. HESS, *as Administrator, etc., Appellee,* v.
WILLIAM HARTWIG, *Appellant.*

No. 16,756.

#### SYLLABUS BY THE COURT.

1. EVIDENCE — *Transactions with Persons Since Deceased — "Party."* No one is disqualified as a witness by reason of his interest in the result of a litigation, and the term "party," as used in section 320 of the code of 1909, which prohibits a party from testifying concerning personal transactions and communications with a person since deceased, does not mean or include one not technically a party to the action, however much he may be interested in the result of the action.

2. GIFT—*Delivery—Redelivery to Donor as Custodian or Trustee.* While a complete and unconditional delivery is essential to the validity of a gift, a constructive or symbolic delivery will meet the requirements of the law; and where there is a delivery the fact that the property may be redelivered to the donor as agent or trustee of the donee, or for safe-keeping, will not nullify or affect the gift.

3. ———— *Question of Fact.* Testimony relating to a gift held to be sufficient to require the submission of the question to the jury.

Appeal from Allen district court. Opinion filed December 10, 1910. Reversed.

*G. H. Lamb,* and *W. E. Hogueland,* for the appellant.

*G. A. Amos, L. V. Orton, H. A. Ewing, S. A. Gard,* and *G. R. Gard,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The ownership of certain notes and mortgages is the subject of dispute between the parties. On a former appeal many of the facts out of which the controversy arose were stated. (*Hartwig v. Flynn,* 79 Kan. 595.) In the final trial to determine the title of the notes and securities, wherein the administrator prevailed, there was contention as to the admissibility of the testimony of William and Frederick Hartwig, much of which was excluded; and upon the conclusion of the testimony for appellant the court sustained a demurrer to his evidence, on the ground that it did not prove a defense to the action of appellee. On the exclusion of testimony and the sustaining of the demurrer to the evidence of appellant errors are assigned.

The question tried out was whether Gotlieb Hartwig had in his lifetime given the notes and mortgages, or moneys represented by them, to his sons, William and Frederick. As the action of the administrator was brought against William Hartwig, he was incompetent to testify to any transactions or communications had with his father in respect to the notes and mortgages acquired from the father. (Code 1909, § 320.) A number of rulings excluding testimony, of which complaint is made, were clearly correct, because it came within the statutory limitation. In some cases the testimony excluded, although not communications or transactions between William and his father, and therefore not within the limitation, appears to be immaterial. William was asked to tell why the notes taken in his name were allowed to remain in his father's box until after the latter's death, but he was not permitted to answer. As the inquiry admitted of an answer that would be neither

a communication nor a transaction with his father, the objection should not have been sustained. Frederick Hartwig was also asked why the notes in which he and William were named as payees remained in his father's box, and in the same connection he was asked to state whether the three notes were in his father's box for safe-keeping. These questions were excluded, and in support of the ruling it is argued that as Frederick was interested in the result of the litigation because one of the notes was claimed by him he was incompetent to testify to any communications with his father in relation to these notes. The fact that a person other than the parties may have an interest in the result of the action does not disqualify him as a witness. The code specifically provides that no one shall be disqualified by reason of his interest in the result of the litigation. (Code 1909, § 317.) The prohibition in section 320 of the code of 1909 is not to be extended by implication, and it has been held to apply only to those who are technically parties to the action. The term "party," as used in the code, does not mean or include persons not parties in the technical sense, however much they may be interested in the result of the suit. (*Mendenhall v. School District,* 76 Kan. 173.) Frederick was therefore a competent witness in this action as to any communications or transactions with his father which bore upon the ownership of the notes.

The testimony of William to the effect that he had paid taxes on the notes was erroneously stricken out. The assessment of the notes to William and his payment of taxes upon them were circumstances going to show ownership. There was testimony in the case to the effect that Gotlieb had suggested to William when he moved into town that he should list the notes for taxation. If William's father, instead of listing the notes for taxation as his own and paying taxes thereon, in fact asked William to list them, and also left him to pay the taxes on the property, it tended to prove that he re-

garded and treated William as the owner of the notes. This testimony should have been received and the jury allowed to determine the truth of the testimony and the probative force to be given it.

There appears to have been sufficient testimony supporting the defense of appellant that the notes involved had been given by Gotlieb Hartwig to his sons and had become their property prior to their father's death. There was testimony that two of the notes were payable to the order of William Hartwig and one to Frederick Hartwig. The mortgage securing each of these notes was executed in favor of the payee named in the note. Gotlieb Hartwig appears to have placed the mortgages on record, and this indicated to some extent that the notes and mortgages were the property of the sons. There was no assignment of the notes and mortgages prior to the death of the father. While the notes and mortgages were in the father's box at the time of his death, it appears that other notes belonging to Frederick, the ownership of which is not in dispute, were also kept in that box. Although William could not testify to communications or transactions had with his father, it does appear that for a considerable time before the father's death William knew that the notes and mortgages were in his own name. There was testimony of a statement by the father that he had given the real estate to his daughter and her husband, and that all the rest of the property would go to William and Frederick. Testimony was received to the effect that about a year before his death the father suggested to William that he list the 2500-dollar note for taxation in William's name. In addition, a witness testified that the father at one time sent a message to William to come and get these notes. It appeared, too, that after reaching manhood William had worked years for his father without wages, and that while serving in the army during the civil war he sent his earnings to his father, and that these were used to swell his father's estate. More than

that, it appears that at all times the relations between William and his father were cordial and friendly. It is clear that, accepting the foregoing testimony as true, and drawing every inference favorable to appellant to which it is open, as we must, the case should have been submitted to the jury.

The fact that the notes were still in the box of the father at the time of his death was not controlling. While a complete and unconditional delivery is essential to a gift, the donation may be consummated by a constructive or symbolic delivery, and the donor may constitute himself or be constituted a trustee of the donee; and the fact that the property may thereafter come into his possession would not necessarily be incompatible with the theory of a gift. (*Barnhouse v. Dewey*, ante, p. 12.) The relationship and the former dealings between father and sons are entitled to consideration in measuring the force of the testimony offered to show a gift. It has been decided that "it requires less positive and unequivocal testimony to establish the delivery of a gift from a father to his children than between persons not related, and where there is no suggestion of fraud or undue influence very slight evidence will suffice." (*Love v. Francis*, 63 Mich. 181, syllabus.)

The contention that there was a variance between the evidence and the issues formed between the parties is not good. The trial court admitted testimony tending to prove a gift, and under the pleadings such testimony was admissible.

The judgment is reversed and the cause remanded for a new trial.