No. 29,519.

MABEL STEVENSON and JANET H. PIERCE, *Appellees*, v. MOLLIE HUNTER et al., *Appellants*.

(293 Pac. 506.)

Opinion filed December 6, 1930.

*John F. Kaster, Ralph W. Oman,* both of Topeka, for Ralph W. Oman, appellant; *Paul H. Heinz,* of Topeka, for Francis Hope, intervener and appellant.

*J. E. DuMars,* of Topeka, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: These are two actions in replevin brought separately by two donees of certificates of stock in the Cities Service Company to recover them from the defendant, Mrs. Hunter. The donation and assignment of the stock, four shares in one case and six in the other, were alleged to have been made by the owner, Lucy A. Milliken, December 2, 1927, and placed in the hands of the defendant, Mrs. Hunter, as trustee for the plaintiffs. The donor died intestate July 1, 1928. A granddaughter, as sole and only heir at law, was permitted to intervene in the actions, and Mrs. Hunter, as administratrix of the estate, and her coadministrator were later made parties defendant. The answers, except that of Mrs. Hunter, raised the issue of the alleged gifts being *inter vivos.* The cases were consolidated and tried together and the demurrers of defendants to the evidence of the plaintiffs were overruled. Defendants stood on their demurrers without offering any testimony, and judgment was rendered for plaintiffs for the recovery of the stock, and defendants appeal.

The questions involved, as stated by the appellants, are:

"(1) That there was no evidence to support the finding of the court that a gift of these certificates of stock had been made to the plaintiff;

"(2) That there was no delivery of the certificates in the lifetime of the deceased;

"(3) That there was no evidence to show that Mollie Hunter was constituted and appointed as the trustee or agent for the plaintiff donees."

We will consider all three of the questions together. It is quite largely a fact case, although there are legal questions involved as to the trustee being such for the donees or for the donor; also as to whether there was a complete delivery of the stock during the lifetime of the donor.

Instead of making formal findings of facts the court in a memorandum set out questions and answers from the testimony of several witnesses, and after thus referring to those of the last witness concluded as follows:

"While the testimony of the witnesses varies somewhat from the above, it is my conclusion that it unquestionably establishes (1) that the decedent made an outright gift of the stocks in question to the two plaintiffs respectively; (2) that she constituted and appointed Mollie Hunter as a trustee for the two donees."

"If it could be said that the evidence does not satisfactorily establish that Mrs. Hunter was constituted a trustee for the donees in these cases, then it would have to be held, under the evidence, that the decedent, Mrs. Milliken, was herself a trustee for them. Under the evidence she was only to receive the income from the stock until her death, which under the authorities did not affect the validity of the gift.

"It appears that Mrs. Hunter obtained the key to the box the day before Mrs. Milliken died. This was in accordance with an arrangement made between the two women long before. If Mrs. Hunter was, as has been found, a trustee for the donees, her authority to take the key, under the circumstances shown, was not revoked, whatever the condition of Mrs. Milliken's mind may have been the day before her death. The gifts, once effectively made, were not revocable."

"It follows that the defendant's and intervener's demurrers to the evidence will be overruled, and as it was announced that they would stand on the demurrers, judgment will be entered for the plaintiffs  . . .."

In the journal entry of judgment reference is made to the memorandum of facts and conclusions, and such reference is followed by two general findings: the first to the effect that the deceased on December 2, 1927, made outright gifts of these shares of stock to the plaintiffs, and that the title to the stock passed to the plaintiffs at that time; the second finding being in the following words:

"2. That the decedent Lucy A. Milliken constituted and appointed Mollie Hunter as a trustee for the plaintiff donees and that there was an acceptance by them of the gifts."

The evidence shows that in 1924 the deceased put these shares of stock in envelopes and wrote the names of these plaintiffs on the envelopes containing them and turned them over to Mrs. Hunter to be delivered to these plaintiffs. Mrs. Hunter declined to be responsible for them, saying she had no lock box, to which the deceased replied: "I will get you one because I want these taken care of in your possession." The deceased later called Mrs. Hunter down to the Farmers National Bank in Topeka and she there rented a lock box in Mrs. Hunter's name, put the envelopes containing the stock in the box and tendered the key to Mrs. Hunter, who declined to carry it because the box contained other stock. She then told Mrs. Hunter where she was putting the key in her pocketbook and said: "If you hear that I am sick, I want you to come and take possession of this key."

The evidence further shows that on December 2, 1927, she requested a lady clerk from the office of the Cities Service Company to meet her at the Farmers National Bank, which she did, and told the clerk she wanted to transfer these certificates to the plaintiffs, but she wanted to continue to draw the dividends while she lived. The lady clerk advised her to make the assignment or transfer of these shares of stock to the plaintiffs on separate papers attached to the certificates, instead of using the blanks on the back of the certificates, because it would give her the privilege of changing them during her lifetime. She followed such advice and made the assignments in that manner. The deceased was to have the income from them during her lifetime and the assignments were so they could be changed by her any time before her death.

That evening she called up Mrs. Hunter by telephone and told her she had everything fixed and mentioned giving these shares to the plaintiffs and said: "I have turned them all over to you to deliver."

A number of women testify as to conversations with the deceased in which she told them of having given shares of stock to the plaintiffs and of her having appointed Mrs. Hunter trustee to deliver them after her death. There is a confusion as to whether Mrs. Hunter was trustee alone or to be associated with two other ladies, and some of the witnesses on cross-examination stated Mrs. Hunter was to be agent or trustee for the deceased. The evidence further shows that the deceased collected the dividends on the stock during her life, and the administratrix has done so since her appointment as such. Mrs. Hunter, immediately on hearing of the illness of the deceased, went to Kansas City, arriving there before the death of the donor, and took into her own possession the key to the lock box before the donor died, and after her death opened the box and took possession of the envelopes containing the stock in question and still has them in her possession.

It is true the deceased in giving her instructions, and telling others of the plans she had made, did not use the most specific and definite terms as an attorney would have done, but if she said and did sufficient to definitely show that she had given the stock to the plaintiffs and placed it in the hands of Mrs. Hunter, as trustee for them, with instructions to deliver the certificates to plaintiffs after her death, it will substantially comply with the legal requirements.

Appellants urge that there was no delivery, because the deceased

retained the key to the lock box and had access to the stock until her last illness and could have changed the assignment at her pleasure, and that the transfer she had made was therefore not irrevocably beyond her control. This is all very logical, but no one can carefully read the evidence in this case without being thoroughly convinced that gifts were not only intended by the deceased but that she had actually made them and had done everything she could reasonably have done to effect a complete delivery.

The intention may be manifested by acts as well as words, or may be inferred from all the facts and circumstances. In the case of *Nestlerode v. Commercial Nat'l Bank*, 121 Kan. 399, 247 Pac. 866, where a gift was involved, it was said:

"Zane's intention was not to be inferred, however, solely from the words which the witnesses attributed to him, but from his conduct as a whole, considered in the light of numerous facts and circumstances which tended to characterize what he desired to accomplish." (p. 402.)

"A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift *inter vivos*. And this intention must be inconsistent with any other theory. . . . It may be manifested by acts or words or both, or it may be inferred from the relation of the parties and from all the facts and circumstances." (28 C. J. 627, 628.)

The confusion in this case plainly arises from the different construction placed upon the evidence as to the trustee, whether she was trustee for the donees or trustee or agent for the donor. There is evidence to sustain both views, but in addition to the finding of the court in favor of the former view, all the surrounding circumstances tend to support that holding. The deceased did not need any agent or trustee to act for her in holding these certificates. She did not need to rent a lock box in the name of a trustee or agent for herself. She inclosed the stock in envelopes. She handed them to Mrs. Hunter with instructions. Later rented a lock box in trustee's name, put them in the box and handed the key to the trustee. When that was declined, she showed her where the key was placed and exacted a promise that she would be sure to get it in case of illness, which she did before death occurred.

"Where a delivery is thus made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as a trustee for the donee. And this is to be determined from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto, as disclosed by the evidence. . . .

"Delivery of property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift, which, in such case, is not revoked by the subsequent death of the donor before the property has been actually delivered to the donee. And the validity of the gift is not affected by the fact that the trustee is not to deliver the property to the donee until after the donor's death." (28 C. J. 639, 640.)

The fact that donor had access to the lock box by holding the key when the trustee declined to keep it is not sufficient to defeat the actual delivery, when there was nothing to indicate any plan or purpose of reservation or revocation of the gifts.

This case is readily distinguished from that of *Ariett v. Osage County Bank*, 120 Kan. 286, 242 Pac. 1018, where the donor, after making an assignment of the bonds at the bank where he had regularly kept them, simply handed them back to the cashier without giving any instructions whatever as to what should be done with them, except that the assignment was not to be registered, and it was held there was no delivery to the donee or to a trustee for him.

In the case of *Hess v. Hartwig*, 83 Kan. 592, 112 Pac. 99, it was said:

"While a complete and unconditional delivery is essential to the validity of a gift, a constructive or symbolic delivery will meet the requirements of the law; and where there is a delivery the fact that the property may be re-delivered to the donor as agent or trustee of the donee, or for safe-keeping, will not nullify or affect the gift." (Syl. ¶ 2. See, also, *Barnhouse v. Dewey*, 83 Kan. 12, 109 Pac. 1081; *Pohl v. Fulton*, 86 Kan. 14, 119 Pac. 716.)

Some of these cases last cited sustain a delivery even if the property is redelivered for safe-keeping, in which it is said the donor can constitute himself as trustee for the donee. But appellants say there were no allegations of that kind in the petitions. The delivery was complete, and whatever access there was afforded to the property was at the instance of the trustee, with the thought only of lessening the responsibility of the trustee. There was no redelivery.

We conclude there was sufficient evidence to support the findings of the trial court that the trustee was for the donees and not for the donor, and that the delivery was complete and not revoked by any redelivery.

The judgment is affirmed.