No. 30,918.

SARAH D. KNOX, *Appellant,* v. THE EL DORADO NATIONAL BANK, *Defendant;* BYRON F. KNOX, as Executor of the Estate of William P. Knox, Deceased, *Appellee.*

(21 P. 2d 353.)

Opinion filed May 6, 1933.

*K. M. Geddes* and *L. J. Bond,* both of El Dorado, for the appellant.

*J. B. McKay,* of El Dorado, and *Gilbert H. Frith,* of Emporia, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by Sarah D. Knox, widow of William P. Knox, to recover possession of bonds in the custody of the El Dorado National Bank. The executor of the will of William P. Knox, who died in June, 1931, was substituted as defendant for the bank. The jury returned a general verdict for plaintiff. The jury also returned special findings of fact. The court rendered judgment for defendant on the findings of fact, and plaintiff appeals. The question is whether intention to make a gift of the bonds was consummated by delivery.

William P. Knox had a safety-deposit box in the bank. When the box was opened after his death, it contained bonds which belonged to him to the amount of $21,000; a bond belonging to his wife for $500; his sister's will, and other documents. In the box were some gold coins in a purse, which Mrs. Knox claimed. The box contained other bonds to the amount of $54,000, which are the bonds in controversy.

The bonds in controversy were in several envelopes. The envelopes were furnished by the Brown-Crummer Company, of Wichita, a bond dealer, to customers as bond containers. On the back of each envelope was a printed blank form for description of contents, beginning "This Envelope Contains." At the bottom were printed words, "Property Of." On one envelope, beneath the printed words "Property Of," were the written words, "Mrs. Sarah D. Knox." These words were written by Mr. Crummer, at the direction of W. P. Knox. On the other envelopes, beneath the printed words had been written the name "W. P. Knox," before which "Mrs." had been written. The handwriting was that of W. P. Knox. Mrs. Knox was not present when the writings were placed on the envelopes, and had nothing to do with the transactions.

All the bonds had been acquired by W. P. Knox from the Brown-Crummer Company, in exchange for maturing bonds or coupons Knox already had. The Brown-Crummer Company invoices showed the sales were made in the period September 24, 1924, to February 1, 1930. The invoices disclosed no sales to Mrs. Knox, and a few

502

days before Knox died the Brown-Crummer Company issued to him a receipt for a number of coupons clipped from the bonds in controversy and delivered to the bank for collection. Mrs. Knox testified she had seen most of the bonds at her home.

The safety-deposit box was rented by Knox on August 3, 1925. The key to the box was on a key ring with a leather tab, on one side of which was the name W. P. Knox, and on the other side the name of Mrs. W. P. Knox. Mrs. Knox testified that on different occasions the key had been in her possession at her home. There was no evidence Mrs. Knox ever used the box for any purpose or had actual access to it during her husband's lifetime.

The findings of fact, so far as material, follow:

"Q. 1. Did William P. Knox give to the plaintiff the . . . bonds described in the petition, or any of them? A. Yes.

"Q. 2. If you answer the foregoing questions in the affirmative, then state:

"(a) Which, or how many of said bonds did William P. Knox give to the plaintiff? A. All.

"(b) When was such gift made? A. Within four or five years prior to his death.

"(c) Where were such bonds at the time such gift was made? A. In his possession in El Dorado National Bank.

"(d) What, if any, change then occurred in the custody of the bonds so given? A. None.

"Q. 15. Did William P. Knox at all times prior to his death have and exercise dominion and control over the bonds in controversy? A. Yes, as her agent.

"Q. 16. Did William P. Knox during his lifetime collect all interest accruing from the bonds in controversy and deposit the same to his own credit in the bank? A. Yes.

"Q. 17. Did William P. Knox ever authorize the El Dorado National Bank to allow the plaintiff access to the safe-deposit box in which said bonds were contained? A. No.

"Q. 18. Did the El Dorado National Bank ever allow the plaintiff to have access to said box during her husband's lifetime? A. No.

"Q. 19. Did the plaintiff at any time during her husband's lifetime ever apply to the El Dorado National Bank for access to said box? A. No.

"Q. 20. If in the foregoing answers to any of the foregoing questions you have found that William P. Knox did give to the plaintiff the bonds in controversy, or any of them, then state:

"(a) Whether he delivered to the plaintiff the bonds so given to her, and if so, how such delivery was made or effected. A. By writing or causing her name to be written on containers.

"(b) Did William P. Knox intend when he made such gift or gifts to sur-

render and relinquish at that time all of his title and interest in the bonds so given, and all his control and dominion over them? A. No."

Finding No. 15 was properly challenged in the district court, but the court let it stand. A distinct division of the brief for appellee is devoted to discussion of this finding, with particular reference to the volunteered addition of the words "as her agent," to the answer "Yes." It is contended there was no evidence to sustain a finding of agency. The contention is supported by the abstracts, and appellant in her reply brief points to no evidence which would sustain such a finding. Appellant contends, however, appellee may not question the finding in this court.

The statute relating to what is commonly called "cross appeal" is R. S. 60-3314. Not long after its enactment the statute was interpreted in the case of *Jones v. Lampe,* 85 Kan. 401, 116 Pac. 619. The syllabus reads:

"An appellee may secure a review of an adverse ruling by serving a notice upon appellant before the case is assigned for final hearing stating that he intends to present a particular ruling for review. The notice should be served early enough to afford appellant time to answer appellee's contention, but, as the notice is not jurisdictional, delay in serving it might justify an application for a postponement of the hearing but would not deprive the court of power to review." (p. 2.)

The case of *Syndicate Co. v. Insurance Co.,* 85 Kan. 367, 116 Pac. 620, was decided the same day the case of *Jones v. Lampe* was decided. In the opinion it was said notice of purpose of the appellee to review a ruling is not necessary as a matter of jurisdiction.

While the statute speaks of service of notice before the case is assigned for hearing, the decision in *Jones v. Lampe* was that delay in serving notice is not fatal, that fair opportunity to meet appellee's contention is sufficient, and that in case of delay, hearing may be postponed to give appellant time to answer appellee's contention, the purpose of the statute being that when an appeal is taken and the parties are in court, every ruling of which either party may complain shall be reviewable.

The effect of the decision in *Jones v. Lampe* was that notice may be by challenge of the ruling complained of in counter abstract and brief, and in *Jackson v. Guss,* 86 Kan. 280, 120 Pac. 353, the court said:

"The notice by the appellees that they desired a review of the rulings made against them is not jurisdictional (*Jones v. Lampe,* 85 Kan. 401, 116 Pac. 619), and is substantially supplied in their brief." (p. 283.)

In the case of *Bolinger v. Giles*, 125 Kan. 53, 262 Pac. 1022, the court said:

"Under our simplified practice a cross appeal may be taken quite informally —by notice to the adverse party any time before the cause is assigned for review (R. S. 60-3314), and the questions sought to be reviewed may be presented with other matters discussed in the briefs." (p. 57.)

The reference here to time of service is a mere statement of the provision of the cited statute, and is not a fresh interpretation of the statute altering the effect of the decision in *Jones v. Lampe*.

In the case of *Coleman v. Railway Co.*, 87 Kan. 190, 123 Pac. 756, a contention of appellee was stated, and the statement was followed by:

"But notice of a counter appeal was not given. (Civ. Code, § 578.)" (p. 195.)

What the facts about notice were does not appear, but the statement did not overrule the previous decision interpreting the statute.

The statute speaks of notice "stating" in what respect appellee asks consideration or review of an order. There is no more formality about manner of stating than there is about method of notification. It is not necessary that the brief or other notice shall say in set phrase "The appellee asks review of the order of the district court relating to" so and so. It is sufficient that challenge of the order in fact be made as a challenge with reasonable definiteness.

In this instance there could be no doubt about what the division of appellee's brief which has been referred to meant, and the ruling discussed is reviewable. For the reasons already stated, the latter part of the jury's answer to question 15 should have been stricken out.

Doubtless the district court did not modify the jury's answer because the court was of the opinion modification was not necessary to rendition of judgment for defendant on the special findings. Soundness of this view is easily demonstrable.

If plaintiff acquired the bonds, she did so by gift. Delivery was essential to effect the gift. The jury found delivery was effected by writing plaintiff's name on the containers. (Finding 20 [a].) The bonds were in possession of Knox in the bank, and no change of possession occurred. (Finding 1 [c] · [d].) Knox did not intend to surrender all control over the bonds when the gift was made. (Finding 20 [b].) He did exercise dominion over them pretty freely

for four or five years. The testimony was that when bonds matured, Knox exchanged them, and the finding was that when coupons matured he cashed them, and used the money as his own. (Finding 16.) Since, according to the jury's theory, Knox had no interest in the bonds, this looked a little queer, and without having been asked about it, the jury undertook to explain it. The jury said Knox exercised dominion over the bonds given to Mrs. Knox, "as her agent." Unless the bonds became property of Mrs. Knox, the explanation amounted to nothing, and it made no difference whether the explanation was left in or was stricken out.

The method of delivery specified in finding 20 (*a*) excluded all other methods of effecting transfer of these bonds by gift. The testimony relating to occasional possession of key to the box was ignored. The specified method of delivery was ineffective as a matter of law. The authorities in this state and elsewhere are uniform on the subject, and it is not necessary for this court to add anything to existing literature on the subject of delivery necessary to effect gift *inter vivos*.

The foregoing renders it unnecessary to consider another defense to the action.

The judgment of the district court is affirmed.