No. 32,442

GEORGE F. ERESCH, *Appellant*, v. MARY A. GUIPRE et al., *Appellants* (WILLIAM GUIPRE and ANDREW GUIPRE, *Appellees*).

(51 P. 2d 1016)

Opinion filed December 7, 1935.

*R. L. Hamilton,* of Beloit, for the appellant.

*C. L. Hunt* and *Frank Baldwin,* both of Concordia, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment that appellee, Andrew Guipre, is the owner of a certain tract of land in Mitchell county, hereafter mentioned.

Lewis Guipre died in April, 1930, leaving as his heirs his widow, Mary A. Guipre, and nine children who were the issue of a former marriage. At the time of his death he was the owner of 560 acres of land in Cloud county, and there stood in his name on the records of Mitchell county the title to the northwest quarter of section 14, township 7, range 6, west of the sixth principal meridian. It is this tract which is in dispute. In December, 1932, a son, Louis Guipre, conveyed his undivided one-eighteenth interest in the real estate left by his father to the plaintiff, Eresch, and Eresch thereafter brought his action to partition all of said lands, one half to the widow and one eighteenth to each of the children, except Louis, who had conveyed to plaintiff. Andrew Guipre answered that the petition did not state any cause of action as to the Mitchell county land; that Lewis Guipre at the time of his death was not the owner; that since 1908 Andrew Guipre had been the sole and exclusive owner in fee simple, and was such at the time of commencement of the action, denied that plaintiff had any right or title, and alleged that Andrew Guipre had been in exclusive possession under claim of ownership which had not been challenged by any of the parties to the action nor by plaintiff or his predecessors in title, and by cross petition he sought to have his title quieted. We shall not refer to the Cloud county lands, for as to them there is no dispute. The appellee, William Guipre, answered admitting the claim of his brother Andrew, and alleged that at the request of the parties in interest he had supervised the renting and operation of the re-

maining lands, and in so doing had expended time, money and expense reasonably worth the sum of $50 per annum, for which he had not been paid, and he asked an allowance of $150 therefor. The widow filed her amended reply and answer to the pleadings of Andrew and William, denying generally and denying specifically that Andrew was the owner of the Mitchell county land, except an undivided one eighteenth, and alleged that he was never the owner, but went on the land as a tenant of Lewis Guipre, and is now estopped to deny the title of his landlord and the landlord's heirs. She further alleged that Andrew's claim to ownership shows that the same is without consideration and void and that he is barred by the statute of limitations. The plaintiff filed a similar reply and answer.

On the issues thus joined a trial was had. The court held the burden of proof to be upon Andrew, and he offered testimony tending to prove that his father had given him the land; that he had been in possession, had made valuable improvements, had paid the taxes, had paid no rent; that his father had repeatedly recognized him as owner, etc. The appellants offered evidence to contradict. The court, as requested, made findings of fact and conclusions of law which, so far as here necessary to be noted, were as follows:

### "FINDINGS OF FACT

"No. 5. Lewis Guipre, deceased, acquired title to the above-described Mitchell county land prior to 1909, and at the marriage of Andrew Guipre, his oldest son, about that time placed the said Andrew Guipre in possession of the said real estate, which possession he had held continuously ever since.

"No. 6. Andrew Guipre made lasting improvements upon said land, expending therefor the sum of $1,500 during the lifetime of Lewis Guipre without direction or control of the said Lewis Guipre.

"No. 7. Andrew Guipre never paid any rent to Lewis Guipre, and paid all of the taxes and special assessments accruing against said property from the time he went into possession until the present.

"No. 8. Lewis Guipre in the first few years after Andrew had gone into possession of the Mitchell county real estate made statements that he had bought the land for Andrew, and as late as 1924 stated that the land was Andrew's, and he had nothing to do with it.

"No. 9. The general reputation in the vicinity of this land as to its ownership was that it was Andrew Guipre's land.

"No. 10. In 1927 Lewis Guipre was a director of the Farmer's State Bank of Simpson, Kan., and for the purpose of the said bank's borrowing money from the First National Bank of Beloit, Kan., of which plaintiff was an official, signed a statement of assets and liabilities, among which assets was listed the Mitchell county land in question. Andrew Guipre had no knowledge of such listing by his father.

"No. 11. Andrew Guipre himself borrowed money from the Farmer's State Bank of Simpson, and in making financial statements to said bank listed the property in Mitchell county as his own.

"No. 12. After the death of Lewis Guipre his estate was probated in the probate court of Cloud county, Kansas, and the Mitchell county land was placed on the inventory of his estate.

"No. 13. None of the heirs of Lewis Guipre, deceased, since the death of Lewis Guipre have made claim to rents from Andrew Guipre or offered to pay taxes on the land occupied by him.

"No. 14. William Guipre has been acting as agent of the heirs to collect rents from the Lewis Guipre land, pay the taxes thereon and do other things necessary in the management thereof, but has never demanded rent from Andrew Guipre nor paid any taxes on the land occupied by him. He has in his hands as proceeds of the same the sum of $878.63, and has been paid nothing for services. A reasonable allowance for such services is the sum of $200.

"No. 15. Andrew Guipre and his younger brother Louis Guipre, who is plaintiff's grantor, had a conversation with one P. J. Paulsen, an abstracter and loan agent, shortly after the death of Lewis Guipre relative to the rights of William Guipre in the land occupied by him, and were advised by him that he did not think Andrew Guipre could claim the land by adverse possession.

"No. 16. Plaintiff acquired title to the land in question by deed from Louis Guipre about December, 1932, through an exchange of property. Plaintiff relied on certificates of title furnished by a Mitchell county abstracter, but made no investigation as to the possession of the property before taking title thereto.

"No. 17. Subsequent to the filing of his action defendant Andrew Guipre obtained quitclaim deeds from four of his brothers and sisters to their interest in the Mitchell county land."

### "Conclusions of Law

"No. 1. Andrew Guipre is the owner of the northwest quarter of section 14, township 7, range 6, Mitchell county, Kansas, by virtue of gift and the statute of limitations, and his title to same should be quieted.

"No. 3. William Guipre should pay to the clerk of this court the sum of $678.63, and upon so doing be discharged from further liability as to rents and profits collected by him.

"No. 4. The costs should be apportioned among all parties hereto in accordance with their interests in the real estate partitioned."

and thereafter rendered judgment accordingly.

The plaintiff, the defendant widow, and those brothers and sisters who did not convey to Andrew Guipre, appeal, and their specifications of error will be discussed in the order presented.

It is urged the court erred in the admission of testimony and in refusing to strike out testimony to the effect that the land was a gift from Lewis to Andrew, it being contended that Andrew did not plead a gift. The code (R. S. 60-2104) requires the answer in a

partition action state the amount and nature of defendant's interest, and may deny the plaintiff's or other defendants' interests. Andrew alleged that Lewis at the time of his death was not the owner, that since 1908 Andrew had been the sole and exclusive owner in fee simple, and in his cross petition he alleged exclusive ownership in himself. This satisfied the requirements of the code. He was not compelled to set forth the manner in which he acquired title, and if he were, appellants waived by replying and answering without filing any motion to make definite and certain. The testimony was not incompetent because Andrew had not specifically pleaded a gift from his father to him.

Appellant plaintiff was represented by one attorney and appellant defendants by another. At some place. in. the trial, not clear from the record, it was stipulated that objection by one should be considered as the objection of both. During the cross-examination of Andrew Guipre by plaintiff's counsel, the following questions were asked and answers given:

"Q. Now, as I understand it, you are claiming this property because you have been in possession for all these years, is that it?

"A. No, sir.

"Q. What is your claim? A. It was given to me."

The other attorney then objected, and after a remark by the court that it would be a little hard for the court to consider it as against one, the attorney asking the question made a similar objection. The latter attorney, having elicited the information, was not in a position to object. Strictly speaking, the witness was incompetent to testify and the objection of the first attorney should have been sustained. However, there was an abundance of evidence justifying the finding of gift, and if there was error in the court's not striking out Andrew's answer, it is immaterial.

It is further argued the trial court erred in admitting testimony. of reputation as to ownership. It would serve no good purpose to detail the testimony here, but some witnesses who testified to pertinent matters concerning Lewis Guipre's statements and Andrew Guipre's possession were asked the general reputation in the community as to who owned the land and, after qualifying, stated that Andrew was the reputed owner. In *Kruse v. Fredlum*, 96 Kan. 456, 152 Pac. 617, it was held:

"While the title to land cannot be established by reputation of ownership

in the vicinity of the land, evidence of reputation may be admitted to show notice or notoriety of claim of title." (Syl. ¶ 2.)

And see the cases cited in the opinion. In view of the fact appellants denied Andrew's title and claimed he was a tenant of his father, and in view of much testimony that the father had said the land was Andrew's, the evidence was admissible under the above rule, and there is nothing in the record which shows it was admitted contrary thereto.

Appellants' contention the trial court erred in not sustaining their demurrers to Andrew's evidence depends to a considerable extent on what they conceive to be properly admitted testimony. In connection, however, they argue that Andrew is estopped to claim ownership. Assuming that there was no need for them to plead and prove estoppel, their claims will be noticed briefly. First, when the administrator of the father's estate made his inventory, he listed this particular land as an asset of the estate. Andrew knew of this and did not protest. The probate proceedings started April 21, 1930, and this action was not filed until September 16, 1933, and he had all that time to protest. The answer to these contentions is that the probate judge was informed that the land belonged to Andrew, but he said that as long as the legal title was in the father, it had better be listed and it was so done. While Andrew did not testify that he told appellants positively he owned the land, he did testify to many circumstances that did show his claim. The other claim is that a tenant is estopped to deny the title of his landlord. There is no doubt that is the rule, but it must first be proved that the relation of landlord and tenant exists. In this case, that burden was upon the appellants and, although it had no bearing on the demurrer under discussion, they failed to do so. The trial court did not err in overruling the demurrer.

It is next urged the trial court erred in refusing to make findings of fact and conclusions of law as requested by appellants and in overruling their motions to set aside certain findings and conclusions. The argument under these assignments is predicated on their version of the facts. The trial court was not so restricted. It was the court's duty to make its findings of fact from all of the evidence and to make its conclusions of law therefrom, and the fact it did not agree with appellants' notion of what the evidence proved is not error. The findings of fact as made are supported by competent testimony and must stand. The conclusions of law on

the findings are proper, and the trial court did not err in not concluding in favor of the appellants thereon.

So far as appellee, William Guipre, is concerned, appellants complain the trial court allowed him $200 for his services, when he asked for only $50 per year and a total of $150. It is argued that on final settlement of his father's estate, he was fully paid up to August 26, 1932, and that when the case was tried in October, 1934, he could be entitled to only two years at $50 per year or $100. The trial court knew as a matter of law that as administrator of his father's estate William was not agent for his brothers, sisters and step-mother in handling their real estate, and that his allowance in the probate court was for his duties as administrator. So far as the record shows, he claimed in 1933, when his answer was filed, $150 for three years. For one year thereafter he continued to act and the trial court allowed him another $50. It has not been made to appear that the total allowance of $200 is erroneous.

Presumably, all of these matters were urged on the motion for a new trial, which was denied. No error on that ruling has been made to appear.

In an informal cross-appeal, appellees object to that part of the trial court's order that the costs be apportioned among all parties hereto in accordance with their respective interests, insofar as it applies to costs made in litigating the questions as to the Mitchell county land. Appellants object to a consideration on the ground no cross-appeal was filed. In *Knox v. El Dorado National Bank,* 137 Kan. 500, 504, 21 P. 2d 353, the matter of cross-appeals and how they may be taken, the provision of the code (R. S. 60-3314) and our decisions were reviewed. It is not necessary to repeat what is there said. In this case, appellees in their brief, printed in conjunction with their counter abstract, say, with respect to the order complained of: "We now ask that the order be changed in this respect." It is sufficient to challenge attention.

R. S. 60-2113 provides:

"The court in making partition shall tax the costs, attorney fees and expenses which may accrue in the action, and apportion the same among the parties according to their respective interests," etc.

In discussing this section of the code, it is said in Dassler's Kansas Civil Code, Annotated (2d ed.): .

"The costs, attorney fees and expenses made by one claiming an interest

in the property and failing to establish same, should not ordinarily be allowed and taxed against the property involved. The basic principle that should govern in the allowance and apportionment of costs, attorney fees and expenses, to be paid from the property or its proceeds, would seem to be that the same be such as were necessarily incurred for the benefit of the cotenants, in order to effect a partition of the property. Outside of such, the costs, attorney fees and expenses should be taxed and paid as in other civil actions." (p. 959.)

None of our decisions are cited in support of the text, although many cases supporting the statement may be found in the annotation in 73 A. L. R. 21, 26, where the common-benefit doctrine and the effect of the title at issue are discussed. (See *Sarbach v. Newell*, 35 Kan. 180, 10 Pac. 529, which treats costs in partition actions.)

It will be observed that as to the Mitchell county land there was no partition, and so far as these lands are concerned, appellants had no title. Had the action been brought solely to try title, appellants would not have been entitled to costs unless they had prevailed. (R. S. 60-3704, 60-3705.) . We are of opinion that the costs incurred in determining the title to the Mitchell county lands should be adjudged in favor of appellees and against appellants.

As to all matters except costs, the judgment of the trial court is affirmed. The judgment as to costs is reversed and the cause remanded with instructions to render a judgment for the costs in accordance with the views herein expressed.